IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SUZANNE E. VOSS,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL ACTION NO. 6:22-CV-00173-JDK |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On May 5, 2022, Plaintiff filed this civil action pursuant to the Social Security Act ("the Act"), Section 205(g), for judicial review of the Commissioner's denial of her application for Social Security benefits. (Doc. No. 1.) Pursuant to 28 U.S.C. § 636(b), the case was referred to the undersigned for findings of fact, conclusions of law, and a recommendation for the disposition of the instant action. For the reasons stated below, the court **RECOMMENDS** that the ALJ's decision be **AFFIRMED**.

### BACKGROUND

On February 13, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (Transcript ("Tr.") at 53, 66, 79–81, 97, 251–52.) Plaintiff alleged disability beginning on February 3, 2020. *Id.* at 251. The claim was initially denied on October 13, 2020, (*id.* at 81, 95–97, 111–12, 157), and upon reconsideration on January 11, 2021 (*id.* at 113, 127–28). A telephonic hearing was held before ALJ Brock Cima on August 17, 2021. *Id.* at 18, 34. The ALJ issued a decision

1

finding that Plaintiff was not disabled under the Act on September 13, 2021. *Id.* at 15–26. Plaintiff appealed, and the Appeals Council denied Plaintiff's Request for Review on March 24, 2022. *Id.* at 6–10. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Plaintiff has filed the instant action for review.

## LEGAL STANDARD

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the court "may not reweigh the evidence in the record, nor try the issues de novo," and is not allowed to substitute its judgment for the Commissioner's judgment. *Bowling*, 36 F.3d at 434 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996).

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 F. App'x 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). However, the court must do more than "rubber stamp" the ALJ's decision; the court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d at 393.

A claimant bears the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner utilizes a five–step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). At Step One, the Commissioner determines whether the claimant is currently engaged in

substantial gainful activity. At Step Two, the Commissioner determines whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. At this Step, the Commissioner must also determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given her impairments, both severe and non–severe. Then, at Step Four, the Commissioner determines whether the claimant is capable of performing her past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 416.920(b)–(f) and 404.1520(b)(1)(f).

An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at Step Five if the claimant shows that she cannot perform her past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (per curiam).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his September 13, 2021 decision:

1. The claimant meets the insured status requirements of the Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since February 3, 2020, the alleged onset date. (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: type 1 diabetes, diabetic retinopathy, and lumbar radiculopathy. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

   CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except:

   - She can occasionally climb ramps and stairs.
   - She can never climb ladders, ropes, or scaffolds.
   - She can occasionally balance, stoop, kneel, crouch, and crawl.
   - She can frequently handle and finger bilaterally.
   - She can never operate a motor vehicle, work at unprotected heights, or work around moving mechanical parts.
   - She is unable to read small (10 point) print type instructions but can use computers or other machinery that permit the user to enlarge text easily.

6. The claimant is capable of performing past relevant work as a Patient Insurance Clerk and Accounts Receivable Clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Act, from February 3, 2020, through the date of this decision. (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 20–26.)

The ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. *Id.* at 26.

## ANALYSIS

Plaintiff alleges that the decision of the Commissioner is not supported by substantial evidence because the ALJ failed to support his determination that Plaintiff's mental impairment was non-severe with evidence in the record. (Doc. No. 11, at 7–8.) Plaintiff further contends that the ALJ failed to consider her mental impairment in determining her RFC and that substantial

5

evidence does not support the ALJ's finding that she can frequently handle and finger bilaterally or use a computer with enlarged text. (Doc. Nos. 11, at 9; 13, at 2–3.) The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's mental impairment was non-severe and the ALJ's RFC finding that Plaintiff could perform sedentary work. (Doc. No. 12, at 3.)

### I.     Plaintiff's Mental Impairment

An impairment is severe at Step 2 if it is "anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000)). To determine whether a mental impairment is severe, the ALJ must consider the four areas of mental functioning known as the "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ evaluates a claimant's mental impairments in each area based on a five-point scale consisting of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

Plaintiff argues that the ALJ erred in finding that her depression was non-severe. (Doc. No. 11, at 8.) At Step 2, the ALJ found that despite Plaintiff's depression, Plaintiff had: (1) no limitation with understanding, remembering, and applying; (2) no limitation in interacting with others; (3) mild limitation with concentrating, persisting, and maintaining pace; and (4) mild limitation with adapting or managing oneself. (Tr. at 21–22.) Plaintiff specifically challenges the ALJ's finding that she suffered only a mild limitation with concentrating, persisting, and maintaining pace. (Doc. No. 11, at 7–8.)

The ALJ found that Plaintiff suffered a mild limitation in this area because although she reported problems with her memory, concentration, and completing tasks, she also testified that she read, watched TV, and spent time with her grandkids. (Tr. at 21.) The ALJ therefore found that Plaintiff had sufficient concentration to complete most tasks. *Id.* The ALJ acknowledged that Plaintiff experienced symptoms like hopelessness and insomnia because of her depression, which could affect her ability to maintain concentration to complete some tasks, resulting in a mild limitation. *Id.* at 21–22.

Plaintiff contends that the state agency medical consultant found that she had a severe mental impairment, in part, because she had a moderate limitation with concentrating, persisting, or maintaining pace. (Doc. No. 11, at 7; Tr. at 87, 93.) She alleges that the record does not support the ALJ's finding that Plaintiff had a mild limitation in this area because she never testified that she read, watched TV, or spent time with her grandkids. (Doc. No. 11, at 7.) The record belies this argument. Plaintiff testified that she does not read anymore. (Tr. at 39.) She also testified that she could read an article for 20–30 minutes before her eyes got really bad. *Id.* at 40. Plaintiff testified that she watches TV, but it is blurry even with her glasses. *Id.* at 39. She also testified that she listens to the TV often. *Id.* at 46. Plaintiff testified that she spends time with her daughter and grandkids during her free time. *Id.* at 39. Plaintiff also presented evidence that she played pool three times a week, but then testified that she does not play anymore because of her physical impairments. *Id.* at 44, 332. As for completing tasks, Plaintiff testified that she does not always focus on TV shows from start to finish because she might leave the room or turn on a different TV show if she is bored. *Id.* at 46–47. The conflicting evidence presented by Plaintiff tends to support the ALJ's finding that Plaintiff's symptoms were not as severe as she alleged and that she had sufficient concentration to complete most tasks. *Id.* at 21, 24. The court will not reweigh evidence

in the record or make credibility findings. *See Bowling*, 36 F.3d at 434; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) ("The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.").

Moreover, Plaintiff's medical records indicate that she was consistently found to have normal behavior, mood, and affect and was oriented to person, place, and time. (Tr. at 543, 562–63, 570, 596, 621, 861, 907, 1023, 1340, 1511, 1684.) Substantial evidence supports the ALJ's finding that Plaintiff suffered only mild limitations with concentrating, persisting, and maintaining pace. Plaintiff therefore has not shown that the ALJ erred in determining that Plaintiff's depression was non-severe.

## II.  The ALJ's RFC Finding

The RFC is an assessment made by the Commissioner, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her physical or mental impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). When evaluating a claimant's physical abilities, the Commissioner first assesses the nature and extent of physical limitations, and then determines the RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545. The ALJ makes separate function-by-function findings of the seven exertional strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling), and other non-exertional physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching). SSR 96-8; 20 C.F.R. § 404.1545(b). Pursuant to the narrative discussion requirement provided in SSR 96–8, in the ALJ's discussion of the claimant's abilities to perform any of the seven strength demands, "each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand,

lift/carry, push/pull'). It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work." SSR 96–8p. Only after the function-by-function analysis may the RFC be expressed in terms of the exertional levels of work (sedentary, light, medium, heavy, and very heavy). SSR 96-8.

Plaintiff alleges that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not consider her mental impairment of depression. (Doc. No. 13, at 2–3.) Even if an impairment is found to be non-severe at Step 2, an ALJ must still consider the limiting effects of all impairments, even those that are not severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(2). Here, the ALJ acknowledged this requirement in his decision (Tr. at 23–24) but did not discuss the objective medical evidence surrounding Plaintiff's mental impairment, nor any potential limitations on Plaintiff's ability to work because of her depression in determining her RFC. Indeed, the ALJ merely acknowledged Plaintiff's allegations concerning her mental impairment before discussing the record surrounding her physical impairments. *Id.* at 24. This was error.

To constitute reversible error and warrant remand, Plaintiff must show that she suffered prejudice due to the ALJ's mental RFC determination. *See Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"). Although the ALJ erred in failing to consider the objective medical evidence surrounding Plaintiff's depression and whether it imposed any limitation on her ability to work, Plaintiff has failed to show prejudice resulting from this error.

9

Plaintiff alleges that she was prejudiced by the ALJ's failure to consider her mental impairment in determining that she had the RFC to perform sedentary work and could perform her past relevant work that the vocational expert ("VE") classified as skilled because the state agency medical consultant found that she was limited to detailed but not complex work and the ALJ did not question the vocational VE about this. (Doc. No. 13, at 4–5.) Despite finding that Plaintiff could carry out detailed but not complex instructions, the state agency medical consultant opined that Plaintiff was not limited to unskilled work. (Tr. at 93–95.) In this regard, the state agency medical consultant's finding was the same as the ALJ's determination—that Plaintiff could perform skilled work. *Id.* at 25, 95. Thus, Plaintiff has not made a sufficient showing that, had the ALJ included these findings, the ALJ's decision would have been different and more favorable.

Plaintiff's counsel also had the opportunity to solicit testimony from the VE regarding any mental impairments and potential limitations the ALJ failed to include in his hypothetical but did not do so. *Id.* at 49–50. *See Bowling*, 36 F.3d at 436 (noting that an ALJ's hypothetical question is not defective if "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions[,] including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question"). Moreover, the ALJ clearly considered evidence regarding Plaintiff's mental impairment and the effect her depression had on her ability to work at Step 2, finding that Plaintiff's depression caused only mild limitations on her ability to work and was therefore non-severe. (Tr. at 21–22.) Thus, Plaintiff has not demonstrated that the ALJ's failure to incorporate her mental impairment in the RFC has caused her prejudice.

Plaintiff next contends that the ALJ substituted his own medical judgment to determine Plaintiff's RFC because nothing in the record evidenced Plaintiff's ability to frequently handle and finger bilaterally. (Doc. No. 11, at 9.) Plaintiff admits that the state agency medical consultant did not recognize any degree of limitation on Plaintiff's ability to frequently handle and finger bilaterally. *Id.* Plaintiff, however, does not identify any evidence in the record that contradicts the ALJ's finding that she can frequently handle and finger bilaterally. Plaintiff therefore has not met her burden. *See Anderson*, 887 F.2d at 632–33.

The record indicates that in July 2020, Plaintiff was diagnosed with primary osteoarthritis of both hands with identified left wrist pain but was found to have normal range of motion in both hands, with no swelling or deformity. (Tr. at 1548–49.) In March 2021, Plaintiff reported pain and swelling associated with thumb triggering. *Id.* at 1595. Plaintiff's treating physician opined that conservative management for her thumb triggering failed and identified moderate edema at the thumb joint with negative thumb grind. *Id.* at 1584. Her treating physician also identified that she had a history of bilateral carpal tunnel release and responded well after treatment. *Id.* at 1595. Her physician acknowledged that her index finger triggering was managed with corticosteroid injections. *Id.* In June 2021, Plaintiff's physician found no episodes of Raynaud's in her fingers and no edema. *Id.* at 1681, 1684. The state agency medical consultant also did not identify any manipulative limitations. *Id.* at 90. Plaintiff testified that she has a difficult time handling objects because her hands frequently cramp up and go numb. *Id.* at 41. The ALJ found that Plaintiff's impairments could cause the alleged symptoms, but her allegations concerning intensity, persistence, and limiting effects were inconsistent with objective medical evidence. *Id.* at 24. Substantial evidence supports the ALJ's finding that Plaintiff can frequently handle and finger bilaterally.

Finally, Plaintiff contends that the ALJ substituted his own medical judgment to determine that Plaintiff could read text larger than 10 points. (Doc. No. 11, at 9.) In his RFC finding, the ALJ determined that Plaintiff could use computers so long as she was able to enlarge the text. (Tr. at 23.) Plaintiff was diagnosed with proliferative diabetic retinopathy of both eyes without macular edema associated with type 1 diabetes. *Id.* at 1708. Plaintiff testified that she no longer owned a computer because she would have to enlarge the text so much that it would not fit on the screen. *Id.* at 39–40. But Plaintiff also admitted that she read articles. *Id.* at 40. In April 2020, during Plaintiff's self-assessment, she acknowledged that she could read fine print and use computers. *Id.* at 325. In July 2021, Plaintiff's treating physician assessed her vision as stable. *Id.* at 1708. As the ALJ acknowledged, the record reflects that Plaintiff may struggle reading text smaller than 10 points. *Id.* at 23. But the record does not support Plaintiff's contention that she cannot read any text size at all. Substantial evidence supports the ALJ's finding.

Plaintiff also asserts that the ALJ failed to obtain testimony from the VE regarding her inability to avoid workplace hazards due to her vision impairment. (Doc. No. 13, at 5–6.) The state agency medical consultant opined that Plaintiff was unable to avoid workplace hazards. (Tr. at 123.) The ALJ questioned the VE about Plaintiff's visual limitations and their effect on her ability to work. *Id.* at 48. As discussed above, Plaintiff's counsel had the opportunity to question the VE about Plaintiff's inability to avoid workplace hazards but chose not to. *Id.* at 49–50. *See Bowling*, 36 F.3d at 436.

## CONCLUSION

In sum, substantial evidence supports the ALJ's finding that Plaintiff's mental impairment was non-severe, and that Plaintiff had the RFC to perform sedentary work and could perform her past relevant work. Although the ALJ erred in failing to consider Plaintiff's mental impairment

when determining Plaintiff's RFC, Plaintiff has failed to show prejudice resulting from this error. The court therefore **RECOMMENDS**, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), that the final decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**So ORDERED and SIGNED this 5th day of January, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE